### ASH et al. v. MICKLESON.

No. 16322—Opinion Filed April 6, 1926.

Rehearing Denied July 6, 1926.

1. **Oil and Gas—Mining Partnership—Requisites.**

A mining partnership or joint adventure cannot exist unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits and losses.

2. **Partnership—Nonexistence of Relation—Mere Intention to Form in Future.**

Where it is the intention of the parties that a partnership is to become effective upon the happening of a certain contingency, or is to take effect at a future day, the relation of partners does not exist.

3. **Estoppel—Estoppel by Silence—Requisites.**

In order for the silence of a party to constitute an estoppel against him, it must not only have been his imperative duty to speak, but the party in whose favor the estoppel is invoked must have been misled into doing something to his detriment which he would not have done except for such silence.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Wagoner County; O. H. Searcy, Judge.

Action by D. D. Mickleson against Roy Ash, Fred Hyer, F. L. Finch, and J. W. Boley. Judgment for plaintiff, and defendants bring error. Affirmed.

Owen, Yancey & Fist, for plaintiffs in error.

Newton & Pinson, for defendant in error.

Opinion by JARMAN, C. In 1920 Swoveland & Hartman, a corporation, and George H. Currier owned an oil and gas lease on 160 acres of land in Wagoner county. Currier entered into a contract with Fred Hyer and Roy Ash to drill a well on the lease, for which Hyer and Ash were to receive $3 per

foot. $1,000 was paid under the contract when the well was begun, and it was understood that the balance of the consideration was to be placed in a bank in Tulsa. to be paid when the well was completed. The well was drilled to the required depth, when it was learned by Hyer and Ash that the balance of the money to pay for the drilling of the well had not been placed in the Tulsa bank, and they thereupon filed their lien claim for the balance due for drilling the well, and foreclosed said lien, and the casing that was used in the well was sold in satisfaction thereof, and Hyer and Ash' bought the same in at the sale and later sold a portion thereof to F. L. Finch, and the remainder of the casing was left with one J. W. Boley. After the contract was made with Hyer and Ash to drill said well, Mr. Hartman of Swoveland & Hartman entered into a contract with D. D. Mickleson, whereby Mickleson agreed to let Swoveland & Hartman, a corporation, have the use of the casing necessary for drilling the well, and for which Mickleson was to receive a one-fourth interest in the lease provided the well produced oil, and it was further agreed that upon the completion of the well the casing was to be returned to Mickleson. Mickleson was not interested in the drilling of the well and was not to pay any of the expenses incident thereto, and he was to become interested in the well only in the event oil was produced. No oil was ever struck in the well. Mickleson was not made a party in the action brought by Hyer and Ash to foreclose a lien on the casing. This action was brought by Mickleson against Hyer, Ash, Finch, and Boley, to recover possession of said casing. A jury was waived and judgment rendered for the plaintiff, and the defendants bring error.

The real parties in interest, who are prosecuting this appeal, are Hyer and Ash. Boley is only a nominal party and claims no interest in the casing, and it is agreed. that Finch is entitled to recover from Hyer and Ash the amount he paid for casing purchased from them (for which judgment was rendered in the trial court), in the event the judgment of the trial court is affirmed.

It is contended by Hyer and Ash that Currier and the Swoveland-Hartman corporation and Mickleson were mining partners or joint adventurers in the drilling of said well, and that the entire property of the joint adventurers, regardless of which party contributed the same, became liable for the payment of the debts incurred in carrying out such adventure. It is further contended that any member of the joint adventure, holding possession of personal property belonging to himself or his associates, is presumed to have authority to contract with respect to such property for any purpose within the scope of the adventure, and that such contract binds his associates with respect to their interest in the property.

It is unnecessary to attempt to pass upon all of the questions raised in the brief of the defendant for, under the facts and circumstances, Mickleson was not engaged in a joint adventure with Currier and the Swoveland-Hartman corporation. Mickleson was not a partner with the other parties in the drilling of the well. and was not to become such unless the well turned out to be an oil producer, and since the well, when completed, failed to produce oil, the contract with reference to a partnership was wholly executory and was never consummated. In this connection, we adopt the language used in the case of Meagher et al. v. Reed (Colo.) 24 Pac. 681, quoted with approval by this court in the case of Wammack et al. v. Jones. 103 Okla. 1, 229 Pac. 159, as follows:

"It is undoubtedly true that a partnership in praesenti may be constituted by an agreement if it appears that such was the intention of the parties. But where it expressly appears that the arrangement is contingent. or is to take effect at a future day. it is well settled that the relation of partners does not exist. and that. if one or more of them refuses to perform the agreement, there is no remedy between the parties except a suit in equity for specific performance or an action at law for the recovery of damages, should any be sustained."

And as said in the case of Gillespie v. Shufflin, 91 Okla. 72, 216 Pac. 132, "there must be a co-operation among the parties in the developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits and losses in order to constitute a mining partnership." There was no agreement among the parties whereby each agreed to pay his proportionate part of the expenses and to share in the profits and losses in the drilling of the well. Under the foregoing authorities, Mickleson and the other parties were not joint adventurers or mining partners. and the casing of Mickleson was not liable for the balance due Hyer and Ash under their contract with Currier for the drilling of said well.

It is next contended that Mickleson permitted Currier and the Swoveland-Hartman corporation to deal with the casing and handle the same as their own, and that, therefore, Mickleson is estopped to assert his title thereto as against Hyer and Ash. In support of this contention, it is insisted that Mickleson went out to the leasehold

when the drilling was in progress, in company with one of the members of the Swoveland-Hartman corporation, when a conversation was had between Ash and such member of the Swoveland-Hartman corporation, with reference to the casing, and that Mickleson, who heard the conversation, never, at any time, advised the driller that he was the owner of the casing and had merely loaned the same to the Swoveland-Hartman corporation and Currier to drill the well. The silence of Mickleson however, did not cause Hyer and Ash to act to their detriment. The evidence shows that they were not relying upon the enforcement of a lien against the casing in order to procure pay for their work in drilling the well, but the reason they proceeded with the drilling of the well was that they believed the balance of the money was in the bank at Tulsa, and, under these circumstances, the plaintiff is not estopped to assert ownership to the casing. In order for the silence of a party to constitute an estoppel against him, it must not only have been his imperative duty to speak, but the party in whose favor the estoppel is invoked must have been misled into doing something to his detriment which he would not have done except for such silence. Hickman v. Davis. 56 Okla. 483. 155 Pac. 1170.

For the reasons above given. the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 756. (2) 30 Cyc. p. 358. (3) 21 C. J. pp. 1150, 1151 § 154.